**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 2 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

RAYFORD MAYBERRY,

      Petitioner - Appellant,

v.

RON WARD *, Director of Oklahoma
Department of Corrections,

      Respondent - Appellee.

No. 01-6364
(D.C. No. CIV-01-238-W)
(W.D. Oklahoma)

**ORDER AND JUDGMENT** **

Before **SEYMOUR** , **PORFILIO** , and **BALDOCK** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

\*     Mr. Ward replaced James Saffle as director of the Oklahoma Department of
Corrections in June 2001.

\*\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Rayford Mayberry, a state inmate appearing *pro se*, appeals from the district court's denial of his habeas petition brought pursuant to 28 U.S.C. § 2241. The petition alleged that respondent revoked 123 days of Mr. Mayberry's earned good-time credits in violation of his constitutional right to due process. Because his appeal challenges a "final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court," 28 U.S.C. § 2253(c)(1)(A), Mr. Mayberry must obtain a certificate of appealability (COA) before we may review the denial of his § 2241 petition. *Montez v. McKinna*, 208 F.3d 862, 867 (10th Cir. 2000). To obtain a COA under § 2253(c), a habeas petitioner must make "a substantial showing of the denial of a constitutional right." This showing requires a demonstration "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotation omitted). We have jurisdiction under 28 U.S.C. §1291. We conclude that Mr. Mayberry has made the required showing; therefore we grant his application for a COA and reverse.

## I. Procedural and factual history

The following facts are undisputed and supported by record evidence. In October 1996 Mr. Mayberry, an Oklahoma state inmate, was assigned a Class

Level L4 status. This status entitled him to earn forty-four days of good-time credit per month. R. Doc. 25, Ex. C at 3; OP-060211(II)(B) (attached as Ex. E to Aplee's Br.) (providing that L4 inmates may earn 1.47 days of credit for each day served). On April 7, 1998, while incarcerated at the Karnes County Correctional Center, Mr. Mayberry and three other inmates were terminated from their work positions in the prison laundry. *Id.* Doc. 25, Ex. D. Officer Hinojosa stated in his report to Major Head that the four inmates were "no longer to report to work in laundry/booking . . . [d]ue to the confiscation of contraband found in laundry." *Id.* The record reflects that no misconduct or other disciplinary proceedings resulted from the incident, however, *see id.* Doc. 28, Ex. A, and Mr. Mayberry submitted an affidavit averring that both Officer Hinojosa and Major Head assured him that his termination "would not be classified as being fired nor as a job misconduct . . . and that I was only required to find another job assignment, as no contraband confiscated [] in the Laundry belong[ed] to me." *Id*. Doc. 34, Ex. A. The record reflects that Officer E. Garcia talked with Mr. Mayberry about the incident on April 8, 1998, noting that Mr. Mayberry complained that it was unfair that he had been "fired from the Laundry job . . . because he had not taken the tobacco." *Id.* Doc. 28, Ex. F.

Mr. Mayberry was assigned a kitchen job on May 7, 1998. *Id.* Ex. B. On his "Earned Credit Class Report" prepared June 23, 1998, the unit classification

committee (UCC) [1] noted his "clear" misconduct record and recommended that he "remain" on "current Level IV" status because he had a "good adjustment to facility." *Id.* Officer Garcia filed the report on June 24, 1998. *See id.* Ex. F.

On July 28, 1998, the Oklahoma Department of Corrections (DOC) audited Mr. Mayberry's credit record. The DOC informed him on July 29 that it had removed a total of 524 days of good-time credit from his record. In a memorandum to Mr. Mayberry, the auditor explained:

> On 5-22-96 you received a class X M.R. This made you in-eligible [sic] for L3 or L4 until 5-22-98. On 4-7-98 you were fired. This is auto L1. You have remained on L1 since that time.

*Id.* Ex. E. No good-time credits may be earned on L1 status. *See* R. Doc. 23, Ex. A; OP-060211(II)(B).

No advance notice was given to Mr. Mayberry that his credits were being revoked, and no hearing was held. Mr. Mayberry formally objected to the removal of those credits. After Mr. Mayberry filed a petition for habeas relief in state court, [2] the DOC conceded that its auditor had erroneously, and without authorization, removed 401 of the good-time credits. *See* Aplee. Br. at 21. The

---

[1]     The UCC consists of the inmate's case manager, a correctional officer or counselor, and a unit manager. The committee is in charge of assigning inmates to appropriate custody levels. *See* R. Doc. 30, Ex. E at 1, 2.

[2]     Mr. Mayberry exhausted his state habeas remedies, with the court denying relief because the state court and appellate records were insufficient to enable the court "to determine what action was taken by the D.O.C. . . . and whether or not there was any due process violation." R. Doc. 2, Ex. 1 at 4.

DOC restored these credits in September 1998, noting that they had been incorrectly subtracted because the auditor had mistakenly overlooked Mr. Mayberry's automatic L4 status assigned upon his transfer to private prisons in October 1996. *See id.* Doc. 28, Ex. A at 2. The DOC refused to restore the remaining 123 good-time credits, however, stating that, under DOC policy OP-060213.II.A.5, assignment to Level 1 was "mandatory upon removal from a job . . . due to job related misconduct or nonperformance." *Id.* Ex. G. The DOC's position was that "[d]ocumentation in your field file reflects that you were fired from your job . . . due to job related misconduct. As a result of being fired on April 7, 1998, you should have been demoted to Class Level 1." *Id.*

Mr. Mayberry then petitioned for federal habeas relief, challenging both the finding that he was terminated for job-related misconduct and the finding that his termination (under the circumstances that he was never written up or disciplined for job misconduct) should result in a mandatory demotion. He submitted an affidavit stating that he had talked with one of the other inmates who was terminated from the laundry the same day, and none of them had suffered a demotion to L1 or any loss of good-time credits as a result of the incident. *Id.* Doc. 34, Ex. B. He alternatively argued that, if he and the other involved inmates were in fact terminated for job-related misconduct, the DOC arbitrarily violated his right to equal protection by retroactively demoting only him. The DOC did

-5-

not counter Mr. Mayberry's affidavits with affidavits from Officer Hinojosa or Major Head; nor did it submit records showing the earned credit status of the other involved inmates to counter Mr. Mayberry's assertions despite three opportunities to do so.

The federal district court denied habeas relief without holding an evidentiary hearing. Instead, the court relied on an affidavit submitted by Jim Rabon, Administrator of the Sentence Administration and Offender Records of the DOC. Although Mr. Rabon confirmed that Mr. Mayberry "was not charged with a disciplinary infraction" over the laundry termination, he contended that the termination mandated an automatic demotion that was overlooked by prison officials and that the mistake was simply "perpetuated" by the classification committee on the Earned Credit Class Report filed June 23, 1998. *Id.* Doc. 30, Ex. A. The magistrate judge assigned to the case concluded that the "mistake in applying earned credits to Petitioner's sentence did not create a protected liberty interest that did not previously exist," and that, "[t]herefore, the revocation of the mistakenly-applied credits did not violate Petitioner's due process rights." *Id.* Doc. 31 at 4. The district court adopted the recommendation and denied the petition. *Id.* Doc. 35 at 3.

## II. Discussion

On review of the denial of a petition for habeas corpus, we review the district court's legal conclusions de novo. *See Patterson v. Knowles*, 162 F.3d 574, 575 (10th Cir.1998). Mr. Mayberry argues that he has a liberty interest in his earned good-time credits even though the DOC now asserts they were not validly earned. We agree with Mr. Mayberry. Oklahoma "has created a liberty interest in earned credits and an inmate is entitled to due process protection prior to the loss of those credits." *Waldon v. Evans*, 861 P.2d 311, 313 (Okla. Ct. Crim. App. 1993); *see also Wolff v. McDonnell*, 418 U.S. 539, 557 (1974) (holding that when state provides right to good time and specifies method of forfeiture, inmate has constitutionally-protected liberty interest entitling him to procedures designed to ensure that the state-created right is not "arbitrarily abrogated"). Under Oklahoma law, once good-time credits are entered on an inmate's credit record, the DOC may subtract them for disciplinary reasons "upon recommendation of the institution's disciplinary committee, following due process, and upon approval of the warden or superintendent." 57 O.S. 1991, § 138; *see also* OP-060211(IV)(C)(2)(c) (attached as Ex. E to Aplee's Br.) (mandating that "[o]nly credit lost through the disciplinary process or court sanction" be posted in the "credits lost through the disciplinary process" column on an inmate's credit record card).

The cases on which the DOC relies in support of its view that there is no liberty interest in good-time credits that have been "mistakenly" granted are distinguishable because in each case, the inmates had no right to the credits in the first place as a matter of law. *See, e.g., Stephens v. Thomas*, 19 F.3d 498, 501 (10th Cir. 1994) (holding that inmates serving life terms were not entitled to good-time credits because state statute expressly foreclosed the granting of good-time credits to such inmates). In contrast, the award of good-time credits to Mr. Mayberry between April and July of 1998 were sanctioned by his UCC and were not the result of a clerical error nor an error arising from misapplication of state law.

The DOC's regulations provide that Level 1 assignment is mandatory upon removal from a job only if the removal is "due to nonperformance or misconduct related to the job." R. Doc. 30, Ex. E at 2. Contrary to Mr. Rabon's assertion that Mr. Mayberry's demotion to L1 was mandatory under this regulation as a matter of law, no document or testimony in the record fully supports that claim. The incident report does not accuse Mr. Mayberry of misconduct or of possessing contraband or having placed it in the laundry room. In his report, Officer Hinojosa simply ordered all employees of the laundry not to report there for work any longer because contraband had been discovered in the area. Obviously, none of the officers involved considered Mr. Mayberry's presence in the area where

contraband was found to be job-related "misconduct," as demonstrated by the fact that he was not given a misconduct report for the incident. Further, Mr. Mayberry's UCC stated that Mr. Mayberry had a "clear" misconduct record and did not recommend demotion to L1 on June 23rd despite its members' awareness of the April 7 incident and of its mandatory duty to demote him to L1 status if he had been removed from a job for misconduct related to the job.

Although the DOC maintains that the UCC's recommendation that he remain at L4 status "had no effect" because the assignment to L1 was "mandatory," Aplee. Br. at 4, that conclusion begs the question of whether Mr. Mayberry was in fact guilty of misconduct related to his job. Only if he was guilty of that misconduct would the UCC's recommendation have no effect. Based on the field record, the auditor's conclusion is clearly contrary to that of the officers involved and the UCC, who were all aware of the incident.

The DOC has produced nothing to show that an auditor is authorized to retroactively reclassify an inmate absent the recommendations of the inmate's UCC. While it is true that an inmate's classification level is discretionary, that discretion rests with the UCC that daily deals with the inmate and not with an administrative auditor. *See* R. Doc. 30, Ex. E at 2 (providing that UCC assigns appropriate classification levels); OP-060211(II)(B) (attached to Aplee's Br. as Ex. E) (providing that class assignments "are determined by the adjustment

-9-

review committee/unit treatment team based upon the desired behavior of the inmate in all areas of institutional life").

The DOC asserts that its auditors have authority to retroactively demote inmates and subtract good-time credits from their record card based on the auditor's authority to compare the field record with the record card for consistency and accuracy. We disagree. Nothing in the documents submitted to this court provide for a retroactive loss of credits based on an auditor's unilateral interpretation of a field record that does *not* contain a misconduct report documenting a disciplinary proceeding. *See* OP-060211(III)(A) (setting forth procedures for determining loss of credits). Although the DOC asserts that its auditor could retroactively demote Mr. Mayberry to L1 status without a disciplinary proceeding or misconduct report, according to the DOC's regulations, only those "credits lost through the disciplinary process as documented by a misconduct report or a court ordered sanction" are to be posted on, and subtracted from, an inmate's credit record card. *See* OP-060211(VI)(C)(2)(c). Mr. Mayberry's loss of credits does not satisfy this requirement. See R. Doc. 28, Ex. A at 3.

Mr. Mayberry's claim that his termination was not for job-related misconduct and not subject to mandatory demotion is supported by his uncontroverted affidavit asserting that none of the other inmates involved

received a similar retroactive demotion and loss of credits. It is further uncontroverted that no disciplinary committee recommended retroactive loss of good-time credits due to the April 7, 1998 incident as required by 57 O.S. 1991 § 138.

The State's argument that it was impossible to provide Mr. Mayberry with a pre-deprivation hearing is without merit, and the cases on which it relies for that proposition are easily distinguishable. *Compare Hudson v. Palmer*, 468 U.S. 517, 532-33 (1984) (holding that meaningful post-deprivation hearing is sufficient to remedy unauthorized intentional deprivations of inmate's property), *with Waldon*, 861 P.2d at 313 (holding that, under *Wolff*, an inmate "is entitled to due process protection *prior to* the loss of [good-time] credits") (emphasis added); *and see Mitchell v. Maynard*, 80 F.3d 1433, 1445 (10th Cir. 1996) ("To meet the standards of due process in a disciplinary proceeding under *Wolff,* the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.").

Even if *Hudson* applied, the State has refused to grant a post-deprivation hearing to resolve whether Mr. Mayberry was in fact terminated from his job for

-11-

job-related misconduct.  In short, Mr. Mayberry was never given an opportunity to obtain testimony from officers with personal knowledge about the incident to demonstrate that his removal from the laundry job was not a disciplinary action subject to mandatory demotion.  Nor was he given opportunity to conclusively establish that other similarly-situated inmates were not retroactively demoted and disciplined with loss of good-time credits because of the incident.  The DOC has not presented sufficient evidence to establish that Mr. Mayberry's accrual of good-time credits was indeed a "mistake" as a matter of law, and it has presented no evidence to controvert Mr. Mayberry's affidavits.

We conclude that Mr. Mayberry earned the challenged good-time credits while formally classified as an L4 inmate.  They were not removed until the auditor, contrary to the UCC's recommendation that Mr. Mayberry remain at L4 status, determined that Mr. Mayberry should retroactively be demoted to L1 status for disciplinary reasons and should suffer a consequent loss of good-time credits.  The auditor removed those credits without notice, without a hearing, and without a disciplinary committee's determination that Mr. Mayberry had committed an infraction, violating both state law and the procedures set forth in *Waldon* and *Wolff*.

The district court erred in holding that Mr. Mayberry had no liberty interest in the good-time credits due to the auditor's opinion that they were "mistakenly"

-12-

earned, and must be reversed. [3] Because the DOC removed the credits without notice or an opportunity for a hearing, it must restore the credits. *See Brown v. Smith*, 828 F.2d 1493, 1495 (10th Cir. 1987) (holding that inmate who demonstrates that due process rights were violated may use § 2241 as remedy to restore good-time credits).

The motion to proceed in forma pauperis in this court is GRANTED. The judgment of the United States District Court for the Western District of Oklahoma is REVERSED and REMANDED for entry of an order consistent with this order and judgment.

Entered for the Court

Bobby R. Baldock
Circuit Judge

---

[3] The district court did not address Mr. Mayberry's equal protection argument.