**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 19 2002**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

EDGAR SEARCY,

     Plaintiff - Appellant,

v.

CHARLES SIMMONS, Secretary of
Corrections, ROBERT D.
HANNIGAN, Warden,

     Defendants - Appellees.

No. 00-3161

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 94-3421-KHV)**

---

Matthew C. Miller (and Matthew J. Wiltanger, with him on the briefs), Shook,
Hardy & Bacon, L.L.P., Overland Park, Kansas, for Plaintiff - Appellant.

Timothy G. Madden, Kansas Department of Corrections, Topeka, Kansas, for
Defendants - Appellees.

---

Before **KELLY** and **MCKAY**, Circuit Judges and **BRIMMER**[*], District Judge.

---

**KELLY**, Circuit Judge.

---

[*]The Honorable Clarence A. Brimmer, Jr., United States District Judge,
District of Wyoming, sitting by designation.

Plaintiff-Appellant Edgar Searcy, who at all times relevant to this appeal was an inmate housed in the Hutchinson Correctional Facility ("HCF"), brought an action pursuant to 42 U.S.C. § 1983 alleging violation of certain constitutional rights stemming from the Kansas Department of Corrections' ("KDOC") Sexual Abuse Treatment Program ("SATP"). The district court entered summary judgment in favor of Defendants on all claims and Mr. Searcy timely filed his notice of appeal. Searcy v. Simmons, 97 F. Supp. 2d 1055 (D. Kan. 2000). We abated briefing pending a sister panel's decision in Lile v. McKune, 224 F.3d 1175 (10th Cir. 2000), which addressed an inmate's similar allegations of violations of constitutional rights stemming from operation of the SATP. Upon publication of that decision, briefs were filed and we heard oral argument, but we abated decision on the case after the Supreme Court granted certiorari in Lile. The Supreme Court reversed the Tenth Circuit's decision in Lile and remanded the case. McKune v. Lile, 122 S. Ct. 2017 (2002). Although the facts in this case differ slightly from those in McKune, we conclude that it controls.

## Background

In January 1997, Mr. Searcy entered a plea of *nolo contendere* to charges of sexual exploitation of a child and was sentenced to 65 months imprisonment. To assist in the rehabilitation of sex offenders and other inmates with a history of

sexually deviant behavior, the KDOC instituted the SATP. Because of his conviction of a sex offense, the KDOC recommended that Mr. Searcy be placed in the SATP. Mr. Searcy accepted this recommendation by signing an inmate program plan that stated,

> I acknowledge that I have been afforded an opportunity to enter into a program plan. I understand that such a program plan is optional but that failure to participate in or successfully complete recommended programs shall result in the withholding of good time credits which affect my date of release.

Aplee. Supp. App. at 15.

Inmates in the SATP must complete and sign a form stating that they accept responsibility for the crime for which they have been sentenced. In addition, inmates in the SATP must complete a sexual history form. In completing the sexual history form, the inmates must list sexual activities where they were the perpetrator and a victim was involved, regardless of whether criminal charges were brought in response to the activity in question. Although inmates in the SATP apparently are not required to divulge full details of these prior incidents, see Aplee. Supp. App. at 56, they are provided a sample sexual history form that calls for the name of the victim, the victim's age, and the age of the inmate at the time of the incident. Aplt. App. at 243. The SATP uses a polygraph examination to verify the truth and completeness of each inmate's sexual history.

An inmate's sexual history receives limited confidentiality. They are

- 3 -

informed that the information they provide could be revealed in a variety of circumstances, including when required under mandatory child abuse reporting laws, see Kan. Stat. § 38-1522, pursuant to a court order, or when the information is need to protect a third party. See McKune, 122 S. Ct. at 2023 (noting that release of the sexual history information is a possibility).

Mr. Searcy refused to sign the admission of responsibility form on the ground that he was not willing to admit to having committed the crime of sexual exploitation of a child.[1]  Certain consequences resulted from this refusal.  At all times relevant to this case, the KDOC had in effect its Internal Management Policy and Procedure 11-101 ("IMPP").  The IMPP, implemented to provide a system of earnable privileges subsequent to changes in Kansas sentencing laws, establishes levels of privileges and incentives to inmates.  The lowest level, level one, allows an inmate limited activities, limited expenditures, limited incentive pay, and only limited access to personal property.  At level three, the highest level for an incarcerated inmate and the level at which the KDOC had classified Mr.

---

[1]While the KDOC apparently based its conclusion that Mr. Searcy failed to participate in the SATP on the ground that he refused to admit responsibility, it is also clear that he objects to providing a sexual history.  Be that as it may, we conclude that admitting responsibility to his crime of conviction could have potentially incriminated Mr. Searcy, despite the fact he pleaded *nolo contendere*. See Thomas v. United States, 368 F.2d 941, 945 (5th Cir. 1966) (noting that self-incrimination was implicated because "[s]till open to [the defendant] were the processes of motion for new trial (including the opportunity to discover new evidence), appeal, petition for certiorari, and collateral attack.").

Searcy prior to his refusal to sign the required forms for the SATP, inmates may purchase audiovisual equipment, handicraft materials and supplies, participate in all organizations and formalized activities, maintain magazine and newspaper subscriptions, and have other expenditure and visitation privileges not available at the lower levels.

In addition, under the pertinent prison regulations, inmates that do not "constructively work or participate in assigned programs" lose the ability to earn any additional good time credits. Kan. Admin. Reg. § 44-6-124(g)(6). Because the KDOC considers the admission of responsibility and sexual history an integral part of the rehabilitative process of the SATP, an inmate's refusal to provide these is deemed a refusal to participate in an assigned program. As a result, an inmate that refuses to provide the required information loses the opportunity to earn any further good time credits. In addition, those good time credits that an inmate loses due to his non-participation cannot be regained. Kan. Admin. Reg. § 44-6-124(e) ("If the entire allocation of good time credits is not awarded at a program classification review, part of that allocation shall not be awarded at a later date.").

As a result of these policies, Mr. Searcy's refusal to admit responsibility and to provide his sexual history resulted in his reduction from level three to level one. Pursuant to the reduction in his privilege level, prison officials took Mr.

Searcy's television, radio, and typewriter.  In doing so, prison officials informed Mr. Searcy that the property would be sent outside of the HCF.  Mr. Searcy refused to sign the consent form for this removal because he apparently had no one outside the prison to care for the property.  The prison officials then sent the property to Mr. Searcy's out-of-state relatives whom Mr. Searcy believes will never return his property to him.

Mr. Searcy then brought this § 1983 action, alleging that prison officials had violated various constitutional rights, including: (1) his Fifth Amendment right against self-incrimination; (2) his Freedom of Speech under the First Amendment when they punished him for asserting his right to remain silent; (3) his right of Free Exercise of Religion when they punished him for adhering to his religious tenets by not untruthfully admitting to crimes he did not commit; and (4) his rights under the Due Process Clause of the Fourteenth Amendment when they sent his property from the HCF without his consent.  On cross-motions for summary judgment, the district court rejected all of Mr. Searcy's claims of constitutional violations and granted the Defendants' motion for summary judgment.

**Discussion**

In this appeal, Mr. Searcy challenges the district court's grant of summary

judgment to the Defendants on his Self-Incrimination, Free Exercise of Religion, and Due Process claims. We review the district court's grant of summary judgment *de novo*, applying the same legal standard used by the district court. Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Serv., 165 F.3d 1321, 1326 (10th Cir. 1999). When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party. Id.

**Self-Incrimination**

In Lile v. McKune, 224 F.3d 1175 (10th Cir. 2000), the panel concluded that the KDOC's policy of imposing penalties for an inmate's refusal to participate in the SATP for fear of self-incrimination violated the Fifth Amendment. The inmate in that case, Robert Lile, received a reduction in his privilege level and a transfer to a maximum security prison for his refusal to divulge his sexual history as part of the SATP. Id. at 1182. The panel concluded that the imposition of these penalties for a refusal to provide potentially self-incriminating statements constituted "impermissible compulsion." Id. at 1189.

A divided Supreme Court reversed. Four Justices stated that the question of whether the KDOC compelled self-incriminating statements from SATP participants could be answered by looking to the standard enunciated by the Supreme Court in Sandin v. Conner, 515 U.S. 472 (1995). McKune v. Lile, 122

S. Ct. 2017, 2026–27 (2002).  In <u>Sandin</u>, the Supreme Court held that challenged prison conditions could not give rise to a due process violation unless those conditions constitute "atypical and significant hardship[s] on [inmates] in relation to the ordinary incidents of prison life."  <u>Id.</u> at 484.  Based on <u>Sandin</u>'s "useful instruction," <u>McKune</u>, 122 S. Ct. at 2027, the plurality concluded that the penalties imposed against Lile were significantly less than potential penalties other inmates faced in cases where the Supreme Court ruled that there was no Fifth Amendment violation.  <u>See, e.g.</u>, <u>Baxter v. Palmigiano</u>, 425 U.S. 308 (1976) (no Fifth Amendment violation where inmate's silence could be used against him in a prison disciplinary proceeding); <u>Ohio Adult Parole Auth. v. Woodard</u>, 523 U.S. 272 (1998) (no Fifth Amendment violation where death row inmate was forced to choose between incriminating himself at clemency interview and having adverse inferences drawn from his silence); <u>Minnesota v. Murphy</u>, 465 U.S. 420 (1984) (defendant's fear of returning to prison if he remained silent did not result in a compelled confession in violation of the Fifth Amendment).  As such, and in the context of the rehabilitative purposes of the SATP, the plurality concluded that the KDOC did not violate Lile's Fifth Amendment right against self-incrimination.  <u>McKune</u>, 122 S. Ct. at 2032.

Justice O'Connor, though not joining the plurality, did concur in the judgment.  Although Justice O'Connor did not agree with the plurality that a

finding of compulsion under the Fifth Amendment should be measured by reference to <u>Sandin</u>'s "atypical and significant hardship" standard, she did agree that the consequences of Lile's refusal to incriminate himself were not "so great as to constitute compulsion for the purposes of the Fifth Amendment privilege against self-incrimination." <u>Id.</u> at 2032–33 (O'Connor, J., concurring). Because Justice O'Connor based her conclusion on the narrower ground that the KDOC's policy was not compulsion under the Fifth Amendment, we view her concurrence as the holding of the Court in <u>McKune</u>. <u>See</u> <u>Marks v. United States</u>, 430 U.S. 188, 193 (1977) (stating that the holding of a fragmented Court "may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . . .") (internal quotation omitted).

Had the only consequences Mr. Searcy suffered for his refusal to provide his sexual history been the reduction in his privilege level and a concomitant transfer to a maximum security prison, <u>McKune</u> would clearly call for affirming the district court's decision. In <u>McKune</u>, however, the plurality noted specifically that Lile's refusal to participate in the SATP for fear of self-incrimination did not extend his term of incarceration nor affect his eligibility for good-time credits. 122 S. Ct. at 2027. In contrast to Lile, who was convicted in 1983, Mr. Searcy is subject to a prison regulation, Kan. Admin. Reg. § 44-6-124(g)(6), promulgated in 1995. <u>See</u> <u>Lile</u>, 224 F.3d at 1182 (discussing the non-applicability of § 44-6-

124(g)(6) to Lile); see also Stansbury v. Hannigan, 960 P.2d 227, 236 (Kan. 1998)

(holding that application of § 44-6-124(g)(6) to an inmate convicted in 1991

constituted an unconstitutional *ex post facto* law). That regulation provides that

"[a] refusal by an inmate to constructively work or participate in assigned

programs shall result in the withholding of 100% of the good time credits for that

program classification review period . . . ." Kan. Admin. Reg. § 44-6-124(g)(6).

Mr. Searcy, convicted in 1997, was therefore subject to § 44-6-124(g)(6)'s

mandatory withholding of good-time credits. As such, Mr. Searcy's case requires

an independent examination as to whether the negative consequence of his refusal

to incriminate himself,[2] the loss of good-time credits, constitutes compulsion

---

[2]We note here that both the panel in Lile and the Supreme Court in McKune determined that the sexual history and admission of responsibility implicated the self-incrimination privilege. The Kansas Supreme Court, however, stated in Bankes v. Simmons, 963 P.2d 412 (Kan. 1998), that "respondents, in administering their Sexual Abuse Treatment Program, can insist that the petitioner admit responsibility, so long as his or her admission is not used against the petitioner in later *criminal* proceedings." 963 P.2d at 420. That case, however, addressed use of such statements in civil proceedings, id. at 417, and the court's statement regarding criminal proceedings could be viewed as nothing more than dicta. Further, in neither this case nor McKune did the state of Kansas indicate that it would never pursue a prosecution based upon information obtained through the SATP. See McKune, 122 S. Ct. at 2025 (noting that the "State confirms its valid interest in deterrence by keeping open the option to prosecute a particularly dangerous sex offender"). Thus, it appears that Mr. Searcy's self-incrimination privilege could be affected by the information required for his participation in the SATP.

under the Fifth Amendment's self-incrimination privilege.[3]

At first blush, it might seem that the KDOC is punishing Mr. Searcy directly in response to his invocation of his self-incrimination privilege. Looking at events sequentially without reference to the context, the KDOC recommended Mr. Searcy for the SATP, Mr. Searcy accepted this recommendation (although refusal to participate would have resulted in the withholding of good-time credits, see Aplee. Supp. App. at 15), the SATP, as an integral part of the program, required Mr. Searcy to provide incriminating information, Mr. Searcy refused to do so, and, as a consequence, the KDOC withheld his good-time credits. But this concatenation of events does not so much describe compulsion as it does display the consequences of Mr. Searcy's own individual choice.

"[T]he Constitution itself does not guarantee good-time credits for satisfactory behavior while in prison." Wolf v. McDonnell, 418 U.S. 539, 557 (1974), and it is quite clear that Kansas does not make any promises regarding an inmate's ability to earn good time credits. See Kan. Stat. § 21-4722 (granting the secretary of corrections discretion to develop a good-time credit award system);

---

[3]While we are mindful that Mr. Searcy suffered consequences other than the withdrawal of good time credit opportunities, those other consequences were rejected by a majority of the Supreme Court as constituting compulsion under the Fifth Amendment. As such, our independent examination focuses on the good time credits, but our conclusion recognizes the entire set of consequences occasioned upon Mr. Searcy.

see also Kansas v. Golston, 7 P.3d 1132, 1135 (Kan. 2000) ("The grant or denial of good time credits is totally within the discretion of penal authorities.") (internal quotation omitted). This is especially so for inmates who, like Mr. Searcy, were convicted subsequent to the promulgation of Kan. Admin. Reg. § 44-6-124, which states only that an "inmate *may* earn good time credits which shall be subtracted from the minimum sentence . . . ." Kan. Admin. Reg. 44-6-124(a) (emphasis added); see also Frazee v. Maschner, 750 P.2d 418, 421 (Kan. Ct. App. 1988) (stating that there is "no present liberty interest in the *possibility* of receiving" good time credits). Indeed, a close read of the regulation reveals that even if Mr. Searcy did fully participate in the SATP, he would still not be *guaranteed* any good-time credits. See Kan. Admin Reg. §§ 44-6-124(f)(1)–(6) (listing factors for KDOC to consider in determining whether to award good time credits). Thus, at most, foreclosing Mr. Searcy from the mere *opportunity* to earn good time credits is not a new penalty, but only the withholding of a benefit that the KDOC is under no obligation to give.

Mr. Searcy therefore, was left with a choice: take advantage of a benefit the KDOC provided or turn down that benefit in order to avoid providing what he feared, perhaps legitimately, would be self-incriminating statements. "Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always

forbid requiring him to choose." McKune, 122 S. Ct. at 2035 (O'Connor, J., concurring) (quoting McGautha v. California, 402 U.S. 183, 213 (1971)). Mr. Searcy, having been convicted through a fair criminal process of a sex offense, was made aware of the consequences of any failure on his part to complete the SATP upon intake into the prison. The fact that the KDOC will not let Mr. Searcy complete the SATP unfettered by its more unpleasant aspects does not render his original choice to enter the program any less voluntary. See Woodard, 523 U.S. at 286 ("It is difficult to see how a voluntary interview could 'compel' respondent to speak.").

Finally, Mr. Searcy's predicament is quite different than the situation where, as described by Justice O'Connor in her McKune concurrence, the consequences of refusing to provide information "go beyond the criminal process and appear, starkly, as government attempts to compel testimony." McKune, 122 S. Ct. at 2035 (O'Connor, J., concurring). The SATP's policy of requiring admission of responsibility and providing a sexual history is one central to its mission of rehabilitating sex offenders.[4] See Aplee. Supp. App. at 30–31 (letter

_____

[4]While there seems to be no question that the KDOC has a valid state interest in operating the SATP, see McKune, 122 S. Ct. at 2024–25 (plurality opinion), our conclusion that the KDOC's actions were not compulsion negates any need to enter into a balancing analysis under Turner v. Safley, 482 U.S. 78, 89 (1987). The First Circuit did just that in Ainsworth v. Risley, 244 F.3d 209, 214–221 (1st Cir. 2001), a case with similar facts to this appeal, and concluded

(continued...)

- 13 -

from Barbara K. Schwartz, Ph.D., discussing the benefits of acknowledging past sexual abuse); see also McKune, 122 S. Ct. at 2024 (plurality opinion) ("Research indicates that offenders who deny all allegations of sexual abuse are three times more likely to fail in treatment . . . .") (citing B. Maletzky & K. McGovern, Treating the Sexual Offender 253–55 (1991)).  While the potential for incrimination is not disputed, there is no assertion that the KDOC is using the SATP as a surreptitious means to obtain evidence for criminal prosecutions.  See McKune, 122 S. Ct. at 2028 (plurality opinion) ("There is no indication that the SATP is an elaborate attempt to avoid the protections afforded by the privilege against compelled self-incrimination.").  Mr. Searcy's lost privileges and lost opportunity to earn future good time credits are quite simply not the result of his refusal to incriminate himself, but are a consequence of his inability to complete rehabilitation the KDOC has determined—in light of the serious offense for which Mr. Searcy was convicted—is in the best interest for Mr. Searcy and society.  See Asherman v. Meachum, 957 F.2d 978, 982 (2d Cir. 1992) (en banc) (holding that state officials may take adverse administrative action for failure to respond to inquiries, even where the answers might incriminate, where the

---

⁴(...continued)
that there was no violation of the self-incrimination privilege.  The Supreme Court, however, vacated that decision in light of McKune.  Ainsworth v. Stanley, 122 S. Ct. 2652 (2002) (mem.).  Further, none of the opinions in McKune performed a Turner v. Safley analysis to reach their respective conclusions.

adverse consequences are imposed for failure to answer a relevant inquiry and not for refusal to give up a constitutional right); see also Doe v. Sauer, 186 F.3d 903, 906 (8th Cir. 1999) (Fifth Amendment not violated where prison denied benefits to an inmate who refused to make statements necessary for his rehabilitation).

We conclude that the pressure imposed upon Mr. Searcy for his refusal to provide an admission of responsibility and a sexual history for the SATP does not "rise[] to a level where it is likely to 'compe[l]' a person 'to be a witness against himself.'" McKune, 122 S. Ct. at 2033 (O'Connor, J., concurring) (quoting U.S. Const. amend. V).

**First Amendment**

Mr. Searcy also claims that the admission of responsibility requirement for the SATP violates his First Amendment right to freely exercise his religion. According to Mr. Searcy, his sincerely held religious beliefs prohibit him from lying. Because, according to Mr. Searcy, he did not commit the offense of sexual exploitation of a child, signing an admission of responsibility form for that crime would constitute a lie. As such, under Mr. Searcy's reasoning, punishing him for not admitting responsibility constitutes punishment for exercising his religious principles.

The district court rejected Mr. Searcy's assertion of a First Amendment violation on two grounds. First, the district court noted that Mr. Searcy's

- 15 -

participation in the SATP was voluntary. Searcy, 97 F. Supp. 2d. at 1061.

Because of the voluntary nature of the program, the district court concluded that

Mr. Searcy could hardly claim that the KDOC, by way of the SATP, was forcing

him to tell a lie. The district court also analyzed Mr. Searcy's claim using the

factors from O'Lone v. Estate of Shabazz, 482 U.S. 342, 350–52 (1987). Using

that framework, the district court concluded that the SATP's requirement for an

admission of responsibility was a reasonable regulation that was not violative of

the First Amendment.

In light of our conclusion that the KDOC's system of revoking privileges

and withdrawing good time credit opportunities in response to an inmate's refusal

to participate in the SATP does not amount to compulsion, Mr. Searcy's First

Amendment claim must fail. See Engel v. Vitale, 370 U.S. 421, 430 (1962) ("The

Establishment Clause, unlike the Free Exercise Clause, does not depend upon any

showing of direct governmental compulsion . . . ."). Mr. Searcy is free to adhere

to his religion's proscription against lying. In doing so, however, he loses certain

privileges he would have received had he complied fully with the requirements

for the SATP. This does not present an infringement of Mr. Searcy's

constitutional right to free exercise of religion. This is especially so because the

requirement of admission of responsibility is generally applicable to all inmates in

the SATP and is not pointed at any particular religion or religious belief. See

Employment Div. v. Smith, 494 U.S. 872, 879 (1990) (holding that neutral laws of general applicability that proscribe or require conduct contrary to religious belief do not violate Free Exercise Clause).

Even were we to assume the admission of responsibility impinges upon Mr. Searcy's right to freely exercise his religious beliefs, we would agree with the district court that the requirement is "reasonably related" to the KDOC's penological interests. Turner, 482 U.S. at 89; see also O'Lone, 482 U.S. at 349. The Turner case provided the following four factors to consider in determining whether a prison regulation is reasonable, and therefore valid, despite its impingement upon an inmate's constitutional right: (1) the regulation must have a logical connection to a legitimate governmental interest; (2) whether an inmate has an alternative means of exercising the right; (3) what impact accommodation of the right would have on guards, other inmates, and the general allocation of resources; and (4) whether there are obvious alternatives that would accommodate the inmate's right at a *de minimis* cost.

The state's interest in rehabilitating sex offenders is a valid one, and the requirement for admission of responsibility is considered a legitimate part of the rehabilitative process. See McKune, 122 S. Ct. at 2024–25. As the district court noted, in the context of this case the applicability of whether Mr. Searcy has an alternative means to exercise his tenets against lying seems questionable. Be that

as it may, Mr. Searcy can avoid this difficulty by not joining what we have already concluded is a voluntary program. Clearly, accommodating Mr. Searcy in this instance would undermine the precept of the entire SATP, that admission of responsibility and overcoming denial are integral to the rehabilitation of sex offenders. Finally, Mr. Searcy's suggestion that the KDOC has an alternative means of accommodating his free exercise rights—not requiring an admission of responsibility—would eviscerate the SATP's legitimate rehabilitative process of accepting responsibility for past behavior. As such, it is not an alternative at all.

**Due Process**

Mr. Searcy also claims the KDOC violated his constitutional right to due process when it sent his property to his relatives without his consent. The district court reasoned that because, under Kansas law, Mr. Searcy still retained formal ownership of the property, the requirements of procedural due process were met when the prison authorities provided him the opportunity to dictate where to send the property. 97 F. Supp. 2d at 1064–65. As to Mr. Searcy's argument that in all likelihood the relatives would not return the property, the district court found it irrelevant because of Mr. Searcy's opportunity to dictate where the prison authorities should send the property.

We agree with the district court. It is well-settled that "[w]hile an inmate's ownership of property is a protected property interest that may not be infringed

without due process, there is a difference between the right to own property and the right to possess property while in prison." Hatten v. White, 275 F.3d 1208, 1210 (10th Cir. 2002). As the district court noted, under Kansas law Mr. Searcy is still the owner of the property. Stansbury, 960 P.2d at 238. As such, the KDOC's action of sending his property to his relatives did not deprive Mr. Searcy of ownership of the property.

The record reveals that Mr. Searcy had every opportunity to dictate where his property should go, but refused to do so. Given his refusal, it was entirely proper for the prison authorities to dispatch Mr. Searcy's property in the manner they did. Indeed, the federal prison regulations provide for similar disposal of contraband, defined broadly to include any material prohibited by statute or regulation, 28 C.F.R. § 500.1(h), in instances where an inmate refuses to provide an address to send the confiscated property. 28 C.F.R. § 553.13(b)(2)(iii) ("Where the inmate has established ownership . . . but . . . refuses to provide a mailing address for return of the property, the property is to be disposed of through approved methods, including destruction of the property."). While there may be a case, such as that suggested by Mr. Searcy, where a prison so limits an inmate's control over his property that it has effectively vanquished any meaningful ownership interest, this is not it. First, the KDOC provided Mr. Searcy a meaningful opportunity to decide the fate of his own property. Second,

the KDOC acted reasonably in sending the property to Mr. Searcy's own relatives.

AFFIRMED