**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 26 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JOSEPH EDMOND DEYONGHE,

Plaintiff-Appellant,

v.

ROBIN WARD, Case Manager;
CAROL CLOUD, Counselor; FRANK
MORRIS, Case Manager; DAVID
PETETE, Auditor; ERIC FRANKLIN,
Warden; MELINDA GUILFOYLE,
Director designee for the DOC,

Defendants-Appellees.

No. 04-6218
(D.C. No. 03-CV-364-R)
(W.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **EBEL** , **BALDOCK** , and **KELLY** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

\* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Joseph DeYonghe, an inmate in the Oklahoma prison system, brought three claims against defendants under 42 U.S.C. § 1983. The first claim, which alleged violations of Mr. DeYonghe's right to due process, was dismissed as untimely. The district court granted summary judgment to defendants on both the second claim, alleging a violation of Mr. DeYonghe's right against self-incrimination, and the third claim, also concerning due process. Mr. DeYonghe appeals. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

I.

In Oklahoma, inmates are classified into one of four class levels for purposes of earning good-time credits, and classifications are periodically reviewed by adjustment review committees. *See* Okla. Stat. tit. 57, § 138(B), (F). On December 3, 1998, when he was at Class Level 4 (the highest good-time-credit-earning level), Mr. DeYonghe had a classification adjustment review. One of the subjects addressed at the review was whether he should be admitted into the Oklahoma Department of Corrections' (ODOC) sex offender treatment program (SOTP). To participate in the SOTP, Mr. DeYonghe was required to admit his sexual offenses. He refused to do so at the review, citing the protection against self-incrimination provided by the Fifth Amendment to the U.S. Constitution. Next to the blank labeled "Refused," a member of the adjustment

review committee wrote "SOT Denies Guilt." R. Doc. 21, Attach. B. Mr. DeYonghe did not participate in the SOTP, and he remained at Class Level 4.

On or about August 25, 2000, an ODOC auditor noted that Mr. DeYonghe had refused participation in the SOTP on December 3, 1998. He also noted that Mr. DeYonghe had continued to be at Class Level 4, even though a program refusal should have placed him at Class Level 1. Mr. DeYonghe was notified that he had erroneously been earning good-time credits at a Class Level 4 rate since December 3, 1998, and that, as a consequence, 719 earned credits were being deducted from his record. He was also informed that he would remain at Class Level 1 until he accepted the SOTP.

Mr. DeYonghe protested the loss of his credits through the prison grievance process and into the Oklahoma state courts. Following its decision in *Childers v. Booher*, No. HC 2001-0440, at 9 (Okla. Crim. App. May 9, 2002) (unpublished decision), which found the SOTP program in violation of the self-incrimination provisions of the Oklahoma Constitution, the Oklahoma Court of Criminal Appeals granted Mr. DeYonghe's request for extraordinary relief and remanded the proceedings to the district court. *DeYonghe v. Guifoyle*, No. MA 2002-0178 (Okla. Cr. App. May 21, 2002). Mr. DeYonghe regained his 719 good-time credits.

After successfully challenging the deduction of his credits, Mr. DeYonghe brought suit, in the district court under § 1983, against the officials allegedly involved in the adjustment review and in deducting his credits. Accepting a comprehensive report and recommendation by the magistrate judge, the district court determined that one of Mr. DeYonghe's claims was time-barred and that correctional officials were entitled to qualified immunity on his remaining two claims.[1] It dismissed the untimely claim and granted summary judgment to defendants on the two other claims. Mr. DeYonghe appeals.

II.

Before we reach the merits of Mr. DeYonghe's claims, we must determine whether Mr. DeYonghe exhausted his administrative remedies, as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). Complete exhaustion of administrative remedies generally is a mandatory prerequisite to filing a § 1983 claim concerning prison life. *Id.*; *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002).

---

[1] The district court also determined that Mr. DeYonghe's claims for monetary relief against the defendants in their official capacities were barred by the Eleventh Amendment. R. Doc. 32 at 2. On appeal, Mr. DeYonghe asserts that he is pursuing claims for monetary relief against defendants only in their personal capacities, Aplt. Br. at 2, and consequently we need not consider the district court's Eleventh Amendment ruling. *See Hafer v. Melo*, 502 U.S. 21, 30-31 (1991) (Eleventh Amendment does not bar claims for monetary damages against officials in their individual capacities).

-4-

With regard to Mr. DeYonghe's first claim, the record does not indicate that he ever raised in any grievance the issue of the composition of the adjustment review panel. This omission indicates that this particular claim was not exhausted. Ordinarily, a petition containing unexhausted claims must be dismissed without prejudice in its entirety. *Ross v. County of Bernalillo*, 365 F.3d 1181, 1189-90 (10th Cir. 2004). But the PLRA also provides that the court may dismiss a claim without requiring exhaustion, "[i]n the event that a claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c)(2). For the reasons discussed in section III below, we conclude that Mr. DeYonghe's first claim falls within § 1997e(c)(2), and we need not remand for the district court to dismiss the complaint for lack of exhaustion.

With regard to Mr. DeYonghe's second and third claims, the government argues that, because Mr. DeYonghe did not file a claim with the Oklahoma Office of Risk Management, he did not complete the administrative process, and, therefore, his claims should be dismissed.

Oklahoma Operation Memorandum 090124 sets forth the inmate/offender grievance process for Oklahoma correctional facilities. *See* OP-090124 (effective

Mar. 23, 2004), available at www.doc.state.ok.us/offtech/op090124.htm. [2] The memorandum specifies that, after trying to resolve an issue through informal means, the inmate should submit an "Inmate/Offender Grievance Report Form," to which the "reviewing authority" will respond. *Id.* at § V. If the grievance is denied by the reviewing authority, the inmate may appeal to "the administrative review authority." *Id.* at § VII.B. There is only one level of appeal: "The ruling of the administrative review authority . . . is final and will conclude the internal administrative remedy available to the inmate/offender within the jurisdiction of the Oklahoma Department of Corrections." *Id.* at § VII.D.1. "The department grievance procedure, however, does not satisfy the additional requirements for exhaustion of administrative remedies required by the Oklahoma Governmental Tort Claims Act [OGTCA]. . . ." *Id.* at § VII.D.2. These additional requirements for OGTCA claims require the filing of a claim with the Office of Risk Management. Okla. Stat. tit. 51, § 156(A) & (C).

The OGTCA, however, categorically excludes liability for claims involving the "operation or maintenance of any prison, jail or correctional facility." Okla.

---

[2] We assume that the relevant portions of the currently effective Operation Memorandum are similar to, if not the same as, those provisions of the version effective when Mr. DeYonghe was pursuing his grievances. To the extent that the versions may differ, we note that it was the State's responsibility to support its argument by providing necessary materials to the court.

Stat. tit. 51, § 155(24).  Consequently, none of the claims involved in this case are cognizable under the OGTCA, and the Office of Risk Management could not offer Mr. DeYonghe any form of relief.  That being the case, he was not required to file a claim with the Office of Risk Management to exhaust his available administrative remedies with regard to the claims he asserts in this action.  *See* OP-090124, at § VII.D.1;  *see also Booth v. Churner*, 532 U.S. 731, 736 & n.4 (2001) (noting that the parties agreed that the statute presupposes some form of redress, and stating, "[w]ithout the possibility of some relief, the administrative officers would presumably have no authority to act on the subject of the complaint, leaving the inmate with nothing to exhaust").  Mr. DeYonghe filed a grievance regarding the revocation of his earned credits, and appealed the denial of that grievance.  Therefore, like the district court, we conclude that Mr. DeYonghe exhausted his available administrative remedies with regard to the revocation of his 719 credits.

For these reasons, we proceed to the merits of Mr. DeYonghe's claims.

### III.

Mr. DeYonghe's first claim alleges that the December 3, 1998 adjustment review violated his Fifth [3] and Fourteenth Amendment rights to due process

---

[3]    Mr. DeYonghe cites to the Sixth Amendment, but, as it is the Fifth Amendment (as applied to the states through the Fourteenth Amendment) that

(continued...)

because there were only two officials at the review, not three as required by Oklahoma statute. *See* Okla. Stat. tit. 57, § 138(F). The district court determined that this claim should be dismissed because it was not filed within the applicable limitations period. We review this dismissal de novo, accepting the well-pleaded allegations of Mr. DeYonghe's complaint as true, and viewing them in the light most favorable to him. *See Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1149 (10th Cir. 2001).

The limitations period for a § 1983 claim arising in Oklahoma is two years. *See Meade v. Grubbs*, 841 F.2d 1512, 1522 (10th Cir. 1988). "A civil rights action accrues when facts that would support a cause of action are or should be apparent." *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995) (quotation omitted); *see also Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1154 (10th Cir. 1998) ("A civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action.") (quotation omitted). Mr. DeYonghe's complaint was filed on March 14, 2003, more than four years after the alleged violations. Mr. DeYonghe asserts that he only learned of the requirement of three officials in September 2000, but the facts underlying

[3](...continued)
provides his constitutional right to due process, we shall construe his pro se pleadings liberally and assume that he intended to rely on the Fifth Amendment and the Fourteenth Amendment as the basis for his first and third claims.

his claim were or should have been apparent to him on the date of the adjustment review. Consequently, his cause of action accrued on December 3, 1998, and his first claim is untimely. [4]

Mr. DeYonghe argues that his complaint was timely because he could not have brought his claims until 2001 at the earliest, as no relief was available until the state trial court took the initial step toward recognizing the unconstitutionality of Oklahoma's SOTP program by making the legal and factual findings underlying *Childers*. Aplt. Br. at 5. The district court, however, held only the first claim to be untimely. That claim concerns the procedure used during the December 3, 1998 adjustment review; it does not involve the self-incrimination

---

[4]    In addition, we doubt that this claim rises to the level of a federal constitutional violation. "The Due Process Clause guarantees due process only when a person is to be deprived of life, liberty, or property." *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994). "A prisoner's liberty interests may arise either from the Due Process Clause itself or from state law." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 808 (10th Cir. 1999). But the Due Process Clause itself does not create a protected liberty or property interest in good-time classification systems, *see Wolff v. McDonnell*, 418 U.S. 539, 557 (1974), and Oklahoma's good-time classification system is discretionary, not mandatory, *see* Okla. Sta. tit. 57, § 138. Thus, Mr. DeYonghe does not have a *right* to be placed in a classification that allows him to earn any particular level of good-time credits, so that the procedure used to assign him to a classification level (i.e., whether his review was by a two-member or a three-member committee) would not implicate the Due Process Clause. *See Templeman*, 16 F.3d at 369 ("Changing an inmate's prison classification ordinarily does not deprive him of liberty, because he is not entitled to a particular degree of liberty in prison."); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) ("[Plaintiff] has no due process interest in the opportunity to earn good time credits.").

issues addressed in *Childers*. Therefore, the timing of *Childers* is inapplicable to the timeliness of Mr. DeYonghe's first claim for relief.

The district court did not err in dismissing Mr. DeYonghe's first claim.

IV.

Mr. DeYonghe's second claim alleges that correctional officials violated his Fifth Amendment right to avoid self-incrimination by penalizing him for refusing to incriminate himself (namely, for crediting him with a program refusal during the December 3, 1998 review and then penalizing him for the program refusal by revoking his 719 good-time credits). The district court granted summary judgment to defendants on grounds of qualified immunity. "We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court." *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999).

Initially, the defendants argue that the second and third claims are also time-barred. As determined by the district court, however, these claims involve an attack on the validity of Mr. DeYonghe's sentence, and therefore they could not be brought under § 1983 until Mr. DeYonghe successfully challenged the removal of his credits. *Heck v. Humphrey*, 512 U.S. 477, 489-90 (1994). This was accomplished when the Oklahoma court granted Mr. DeYonghe relief on

May 21, 2002, and his second and third claims are timely because they were filed within two years of that date.

Turning to the merits, the defendants argue that they are entitled to qualified immunity on these claims because, as of December 3, 1998, the date of the hearing, and August 25, 2000, the date the ODOC auditor authorized the deduction of the 719 credits, it was not clearly established that penalizing an offender for a program refusal violated the offender's Fifth Amendment rights, when the program refusal was due to the offender's refusal to admit guilt in connection with a sex offender treatment program. Mr. DeYonghe relies on *Lile v. McKune*, 24 F. Supp. 2d 1152 (D. Kan. 1998), and *Lile v. McKune*, 224 F.3d 1175 (10th Cir. 2000), *rev'd*, 536 U.S. 24 (2002), in support of his contention that the defendants' actions violated clearly established law.

Before determining whether the law was clearly established, however, we must determine whether Mr. DeYonghe suffered a violation of his rights. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). We conclude that Mr. DeYonghe cannot make this showing with regard to his second claim.

In reversing our decision in *Lile v. McKune*, the Supreme Court held that the Fifth Amendment was not violated when an inmate lost prison privileges that were offered to encourage participation in a sex offender treatment program. *See McKune*, 536 U.S. at 45 (plurality opinion); *id.* at 48-49 (O'Connor, J., concurring

-11-

in the judgment).  Further, in *Searcy v. Simmons*, 299 F.3d 1220, 1226-27 (10th Cir. 2002), we held that there was no unconstitutional compulsion when a Kansas prisoner was deprived of opportunities to earn additional good-time credits by being classified at a lower credit-earning level when he refused to admit guilt in connection with sex offender treatment.  *See also Gwinn v. Awmiller*, 354 F.3d 1211, 1226 (10th Cir.), *cert. denied*, 125 S. Ct. 181 (2004) (relying on *Searcy* in finding no unconstitutional compulsion where Colorado prisoner was forced to choose between entering program or losing ability to earn additional good-time credits).

We recognize that, on its face, this case involves the revocation of earned credits, that neither *Searcy* nor *McKune* involved the loss of earned credits, and that the loss of earned credits is a harsher sanction than the loss of privileges or the opportunity potentially to earn credits at a higher level in the future.  The revocation involved here, however, was a retroactive implementation of an action which, in the ODOC's view, should have been taken at the time of the adjustment review.  In August 2000, Mr. DeYonghe was not told that his credits would be revoked unless he accepted the SOTP program, and therefore was then subject to alleged compulsion in connection with the revocation of earned credits; rather, he was told that the consequences of his prior refusal to admit guilt were retroactively being implemented, and he was deprived only of credits earned since

December 3, 1998, not earned credits from prior periods. Essentially, then, Mr. DeYonghe's challenge is analogous to the situation in *Searcy* –he refused to admit guilt, so he could not participate in the SOTP, and this "program refusal" eventually resulted in his reclassification to a lower credit-earning class. In *Searcy*, we concluded that this type of choice is not compulsion of self-incriminating testimony in violation of the Fifth Amendment. [5] Therefore, Mr. DeYonghe cannot establish that he was deprived of his Fifth Amendment right to avoid self-incrimination, and the district court did not err in granting summary judgment to defendants on Mr. DeYonghe's second claim. [6]

---

[5] We are mindful of Justice Kennedy's statements for the plurality in *McKune*, that "respondent's decision not to participate in the Kansas SATP did not extend his term of incarceration" and that respondent's decision did not "affect his eligibility for good-time credits or parole," 536 U.S. at 38, and of Justice O'Connor's statement, in her concurrence in the judgment, that the imposition of a penalty of longer incarceration "would surely implicate a 'liberty interest.'" 536 U.S. at 52. Our judgment today should not be read as indicating that a revocation of earned credits cannot constitute compulsion for purposes of a self-incrimination analysis. Our judgment is limited to the circumstances before us, where the revocation was in the nature of a ministerial action that retroactively implemented the consequences of the choice presented to Mr. DeYonghe at the December 3, 1998 adjustment review.

[6] Moreover, under *Chavez v. Martinez*, 538 U.S. 760, 769 (2003) (plurality opinion); *id.* at 778 (Souter, J., concurring in the judgment), it appears that six justices of the Supreme Court would find either no Fifth Amendment violation or no civil liability for defendants under these circumstances.

-13-

V.

Mr. DeYonghe's third claim asserts a violation of his Fifth and Fourteenth Amendment rights to due process when the ODOC auditor, without any further process, unilaterally revoked his 719 earned good-time credits based on the alleged program refusal. Again, "[w]e review the district court's grant of summary judgment de novo . . . ." *Simms*, 165 F.3d at 1326.

As stated above, we must first determine whether Mr. DeYonghe had a right to due process in connection with the revocation of his credits. *Saucier*, 533 U.S. at 201. Because Oklahoma has created a liberty interest in earned good-time credits, as discussed below, we conclude that Mr. DeYonghe did have a right to due process in connection with the revocation of his credits. *See Mitchell v. Maynard*, 80 F.3d 1433, 1444 (10th Cir. 1996).

States may create liberty interests. *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 808 (10th Cir. 1999). In *Waldon v. Evans*, 861 P.2d 311, 313 (Okla. Crim. App. 1993), the Oklahoma Court of Criminal Appeals held that Oklahoma "has created a liberty interest in earned credits and an inmate is entitled to due process protection prior to the loss of those credits." *See also* Okla. Stat. tit. 57, § 138 (providing that earned credits may be subtracted for disciplinary reasons "following due process"); R. Doc. 21, Attach. K (OP-060213 § III.B. (effective May 1, 1998) ("Demotions will consist of a reduction in class

-14-

only and will be determined by the adjustment review committee/unit treatment team. Loss of accrued credits will remain a disciplinary committee function.")). Because Oklahoma has provided a right to earned credits and has specified methods of forfeiture of such earned credits, it has afforded Mr. DeYonghe a constitutionally-protected liberty interest in his earned credits that entitles him to due process protections. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974); *Mitchell*, 80 F.3d at 1444.

Nevertheless, moving to the second factor of the qualified immunity test, we conclude that the district court properly held that it was not clearly established, as of August 25, 2000, that Mr. DeYonghe had a federal right to due process protections in connection with the revocation of his allegedly erroneously awarded credits. The crucial fact here is that the ODOC auditor unilaterally revoked the credits under the belief that they were erroneously awarded. In *Stephens v. Thomas*, 19 F.3d 498, 501 (10th Cir. 1994), we held that the revocation of erroneously awarded good-time credits did not infringe on a protected liberty interest and did not implicate the constitutional right to due process. We distinguished *Stephens* in *Mayberry v. Ward*, 43 Fed. Appx. 343, 345-47 (10th Cir. 2002) (unpublished decision), where we held that it was improper for an ODOC auditor to revoke earned credits unilaterally, even if the credits allegedly were awarded mistakenly, because the credits were sanctioned by

-15-

the unit classification committee when they were awarded. *Mayberry*, however, was issued on August 2, 2002, well after the actions at issue, and it is an unpublished, nonbinding decision; for these reasons, it cannot be considered to have clearly established the law in this circuit before the August 25, 2000 revocation involved in this case. The district court did not err in granting summary judgment to defendants based on qualified immunity.

The judgment of the district court is AFFIRMED. Mr. DeYonghe's request for appointment of counsel is DENIED. His motion for supplemental pleading, while being construed liberally as requested, is DENIED. Mr. DeYonghe's motion to proceed on appeal in forma pauperis is GRANTED, and he is reminded of his responsibility to make partial payments until his filing fee is paid in full. The mandate shall issue immediately.

Entered for the Court

David M. Ebel
Circuit Judge

-16-