Harold WINSLOW and Carlos Mikel, Petitioners/Respondents,

v.

Jeremiah W. (Jay) NIXON, Missouri Attorney General, James Purkett, Superintendent, FCC, and Dennis Agniel, Chairman, Missouri Board of Probation and Parole, Respondents/Appellants.

No. ED 80732.

Missouri Court of Appeals,
Eastern District,
Division One.

Dec. 24, 2002.

Jeremiah W. (Jay) Nixon, Attorney General, Andrew W. Hassell, Asst. Atty. Gen., Jefferson City, MO, for appellants.

Harold Winslow, Pro Se, Farmington, MO, for respondent.

MARY K. HOFF, Judge.

Jeremiah W. (Jay) Nixon, James Purkett, and Dennis Agniel (collectively, State Prison Officials) appeal the trial court's judgment and order granting Harold Winslow and Carlos Mikel equitable relief in this action regarding the availability of the Missouri Sex Offender Program (MOSOP) to certain state prisoners at Farmington Correctional Center (FCC). We do not address the appeal to the extent it applies to Mikel due to his release from custody; [1] and we reverse the judgment and order.

The Board of Probation and Parole denied Winslow, a prisoner incarcerated at FCC, good time credit and an early release date because he had not completed the MOSOP. Winslow then filed a petition for declaratory and injunctive relief against State Prison Officials challenging their failure to provide him with "Phase II" of the MOSOP, which he is required to complete prior to his release from custody. State Prison Officials moved for summary judgment and Winslow sought judgment in his favor.

The trial court denied State Prison Officials' motion upon finding there was a material fact at issue regarding the uncertainty of Winslow's "legitimate expectation" to complete the MOSOP as "statutorily mandated." The trial court also entered a declaratory judgment "to remove any uncertainty surrounding this expectation." While acknowledging "an

---

1. Due to Mikel's release from custody, we will address the underlying proceedings and this appeal as though Winslow is the only prisoner pursuing the claims presented to the trial court and supporting the judgment before our Court.

inmate does not have a protected liberty interest in conditional release," the trial court concluded that because "Section 589.040.2 [RSMo 2000][2] uses the word 'shall' in connection with completion of [the] MOSOP, there is created a 'legitimate expectation' that [Winslow] will be afforded the certain opportunity to complete [the] MOSOP sometime during [his] term of incarceration. *See McK[ ]own v. Mitchell,* 869 S.W.2d 765 (Mo.App. [W.D.] 1993) (citing *Board of Pardons v. Allen,* 482 U.S. 369, 377–78, 107 S.Ct. 2415, 2420–21, 96 L.Ed.2d 303 (1987))" (footnote added). Therefore, the trial court declared Winslow's

> status as [an] incarcerated sex offender[ ], eligible for consideration for parole[,] is uncertain because of the inability of [FCC] to facilitate the scheduling of [Winslow] for attendance in Phase II of [the] MOSOP [and ordered] James Purkett, Superintendent of [FCC] ... to inform [Winslow] by letter of a date certain when [Winslow] will be allowed to enroll in Phase II of [the] MOSOP

thereby affording [Winslow] the opportunity to comply with the statutory mandate of Section 589.040.2.... Said letter[ ] shall be delivered to [Winslow] and placed in [his] official [Department of Corrections] file not later than 10 (ten) days after the entry of this order.

The State Prison Officials' appeal followed entry of the trial court's judgment and order.

■ For their first point, State Prison Officials argue the trial court erred in ordering Purkett to provide a date certain by which Winslow would be allowed to enroll in "Phase II" of the MOSOP because the order fails to show deference to prison officials regarding prison administration as required by United States Supreme Court precedent.[3] In their second point, State Prison Officials urge the trial court erred in concluding Winslow had a liberty interest to participate in the MOSOP and requiring Purkett to give Winslow a date certain for Winslow's participation in the MOSOP because the trial

2. Unless otherwise noted, all subsequent statutory citations are to RSMo 2000. Section 589.040 provides as follows:

1. The director of the department of corrections shall develop a program of treatment, education and rehabilitation for all imprisoned offenders who are serving sentences for sexual assault offenses. When developing such programs, the ultimate goal shall be the prevention of future sexual assaults by the participants in such programs, and the director shall utilize those concepts, services, programs, projects, facilities and other resources designed to achieve this goal.

2. All persons imprisoned by the department of corrections for sexual assault offenses shall be required to successfully complete the programs developed pursuant to subsection 1 of this section.

*See also* 14 CSR 80–2.010(4)(D) (2002) which states "[a]ll inmates imprisoned for sexual assault offenses shall participate in and complete the prescribed treatment program devel-

oped by the Department of Corrections prior to being eligible for parole (section 589.040, RSMo)." The MOSOP was created under these provisions.

3. State Prison Officials also contend the trial court erred in ordering Purkett to provide a date certain for Winslow's enrollment in "Phase II" of the MOSOP because this order was not authorized by state provisions which require "appropriate program involvement" by prisoners as a precondition to administrative parole and require imprisoned sex offenders to complete the MOSOP program prior to parole consideration. *See* 14 CSR 10–5.010(2)(A) (2002) which provides in relevant part that "[i]nmates demonstrating acceptable behavior and appropriate program involvement shall be eligible for consideration for administrative parole release ....," as well as Section 589.040 and 14 CSR 80–2.010(4)(D) (2002) as set forth in footnote 2, *supra*. We will not address this argument because the other argument supporting this point is dispositive.

court decision is contrary to *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Specifically, State Prison Officials contend *Sandin* requires that, before finding a liberty interest protected by due process in the prison context, a court must determine that a regulation imposes an "atypical and significant hardship" on prisoners,[4] and Winslow has not met that burden.

◼ We review a declaratory judgment under the standard of review set forth in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). *Laclede County v. Douglass,* 43 S.W.3d 826, 827 (Mo. banc 2001). Therefore, we affirm the trial court's decision unless there is no substantial evidence to support it, it is against the weight of the evidence or it erroneously declares or applies the law. *Id.* Because we conclude the trial court did not declare or apply the law correctly, we reverse.

◼ Courts accord "wide-ranging deference to . . . the decisions of prison administrators." *Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 126, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977). In relevant part this is based on a recognition that courts are not well-equipped to address prison administration problems. *Turner v. Safley,* 482 U.S. 78, 84, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). In *Turner,* the United States Supreme Court observed that

> [r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and

separation of powers concerns counsel a policy of judicial restraint.

*Id.* at 84–85. The Missouri Supreme Court has also acknowledged the need for judicial restraint in matters concerning prison administration. *McIntosh v. Haynes,* 545 S.W.2d 647 (Mo. banc 1977). "It should be clearly understood that penal and correctional institutions are under the control and responsibility of the executive branch of government, not the judicial branch, and that courts will not interfere with the conduct, management, and disciplinary control of this type of institution except in extreme cases." *Id.* at 652–53.

Here, the trial court's order directing the FCC superintendent to advise a prisoner of the date on which the prisoner may enroll in the MOSOP fails to accord due deference to a prison administrator's decision regarding the conduct and management of the MOSOP at a prison facility. Moreover, this trial court directive very specifically addressing the manner in which a prison official administers the MOSOP at a state prison is not based on extreme circumstances. Nothing in the record indicates Winslow was subjected to unusual consideration for the MOSOP. The most that can be gleaned from the record is that prison officials may have determined Winslow's participation in the second phase of the MOSOP needed to be postponed due to limited resources available for the MOSOP at FCC. Under the circumstances, this type of decision by prison administrators is not one subject to judicial interference.

Point one is granted.

◼ In their second point, State Prison Officials argue the trial court erroneously found that Winslow has a liberty interest in participating in the MOSOP because the trial court decision is contrary to *Sandin,*

---

4. *Sandin,* 515 U.S. at 484, 115 S.Ct. 2293.

*supra.* Specifically, State Prison Officials contend *Sandin* requires that, before finding a liberty interest protected by due process in the prison context, a court must determine that a regulation imposes an "atypical and significant hardship" on prisoners,[5] and Winslow has not met that burden.

In resolving this case the trial court did not mention *Sandin,* but relied on the Western District's *McKown* decision, which pre-dates *Sandin.* In particular, the trial court relied on the part of *McKown* that notes the use of the word "shall" in a statute creates a legitimate expectation, and thus a liberty interest protected by due process, when certain other circumstances are satisfied. *McKown,* 869 S.W.2d at 768–69 and 769 n. 6.

■ The United States Supreme Court subsequently criticized the judiciary's reliance on the presence of mandatory language in state regulatory provisions to conclude that a liberty interest protected by due process existed. *Sandin,* 515 U.S. at 477–84, 115 S.Ct. 2293. The Supreme Court decided that in the prison context a state may

> create liberty interests which are protected by the Due Process Clause [but such interests are] limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Id.* at 483–84, 115 S.Ct. 2293. The Missouri Supreme Court has noted this change of approach in analyzing parole statutes. *State ex rel. Cavallaro v.* *Groose,* 908 S.W.2d 133, 135 (Mo. banc 1995). Therefore, in the prison context, a liberty interest protected by due process may arise through state regulatory provisions which create a restraint that either exceeds the prisoner's sentence in a sufficiently unexpected manner or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 484, 115 S.Ct. 2293.

The Western District recently used this analysis in addressing whether a prisoner had a liberty interest in participating in a treatment program. *Goforth v. Missouri Dept. of Corrections,* 62 S.W.3d 566 (Mo. App. W.D.2001). In relevant part, the prisoner alleged his due process rights were violated by the state prison officials' failure to establish and place him in a treatment program for first time offenders. *Id.* at 568. Specifically, the prisoner urged he had a liberty interest in participating in the program due to the mandatory language of a state statute requiring the establishment of such a program. *Id.* at 569. The court looked to *Sandin* as "articulat[ing] the requirements for the creation of a liberty interest" and found such an interest was not present because the prisoner had not alleged "anything that would constitute an atypical or significant hardship." *Id.* The court concluded any effort to demonstrate a hardship through the prisoner's allegation he was "denied the opportunity to '[g]radually reenter the community by demonstrating positive behavioral changes' " would be insufficient because this "hardship is not more significant than others that have been held not to create liberty interests" and is not atypical because the program does not exist, so "no inmate is a participant." *Id.* at 569 (alteration in original).

---

5. *Sandin,* 515 U.S. at 484, 115 S.Ct. 2293.

Thus, the court rejected the prisoner's contention that the mandatory language of the statute is the basis for the creation of a liberty interest protected by due process and followed *Sandin*'s analysis to resolve the due process issue.

█ As the Western District in *Goforth* did, we conclude the *Sandin* analysis, rather than an analysis of any mandatory statutory language, applies to Winslow's contention that his due process rights are violated by his inability to participate in a statutorily created treatment program for certain state prisoners. We further conclude that, under *Sandin*, any hardship suffered by Winslow as a result of his inability to participate in the MOSOP is not either atypical or significant "in relation to the ordinary incidents of prison life" so as to implicate a liberty interest protected by due process. First, there is no indication that Winslow is the only sex offender imprisoned at FCC who is unable to participate in or complete the MOSOP. Rather, the record reveals that the resource limitation affecting the MOSOP is adversely affecting the ability of a number of sex offenders at FCC to participate in and complete the MOSOP. Second, such a hardship is not significant because, as we have observed, the

> "MOSOP is not penal in nature.... Rather, it is a rehabilitative program which [the sex offender] is required to complete before he is eligible for parole.... Failure to complete the program does not add additional punishment, such as an additional sentence, beyond that which has already been imposed upon the sex offender.... The only effect of [the sex offender] not completing [the] MOSOP has been to extend his possible early release date."

**6.** We are only addressing the issue of consideration for early release under administrative

*State ex rel. Nixon v. Pennoyer*, 39 S.W.3d 521, 523 (Mo.App. E.D.2001) (quoting *State ex rel. Nixon v. Pennoyer*, 36 S.W.3d 767, 770–71 (Mo.App. E.D.2000)).

The trial court erred in finding Winslow had a liberty interest protected by due process in enrolling in the MOSOP by a date certain.[6]

Point two is granted.

The judgment and order is reversed.

ROBERT G. DOWD, Jr., Presiding Judge and GEORGE W. DRAPER III, Judge, concur.

parole as indicated in this case.