**Kenneth G. CHARRON, Appellant,**

v.

**Jeremiah W. (Jay) NIXON, Respondent.**

No. WD 72315.

Missouri Court of Appeals, Western District.

Aug. 3, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 31, 2010.

Kenneth G. Charron, pro-se.

Michael J. Spillance, for Respondent.

Before Division Three: VICTOR C. HOWARD, Presiding Judge, THOMAS H. NEWTON, Judge and GARY D. WITT, Judge.

VICTOR C. HOWARD, Judge.

Kenneth Charron appeals the trial court's grant of summary judgment in favor of respondent Jeremiah Nixon (hereinafter referred to as "the State") on Charron's petition for declaratory judgment regarding "good time" credit on his sentences. In four of his six points on appeal, Charron contends that the trial court erred in finding that section 558.041, RSMo 2000, is not unconstitutionally vague. In his remaining points, Charron contends that the trial court erred in adopting the proposed findings of the State and in denying David Bullock and Charles Rentschler's motions to intervene. The judgment of the trial court is affirmed.

## Factual and Procedural Background

Kenneth Charron is currently serving a life sentence for a forcible rape conviction as well as three consecutive thirty-year sentences as a result of his convictions of two counts of second-degree robbery and one count of first-degree burglary. This appeal arises from the trial court's grant of summary judgment in favor of the State on Charron's petition for declaratory judgment purporting to seek a determination of the constitutionality of section 558.041, which permits an offender to be rewarded with credit on his sentence.

Charron has pursued similar claims previously. See Rentschler v. Crawford, 263 S.W.3d 708 (Mo.App. W.D.2008); Charron v. Crawford, 285 S.W.3d 362 (Mo.App. W.D.2009). In Rentschler, Charron unsuccessfully litigated a declaratory judgment action seeking a declaration that his life sentence contained a conditional release date. Subsequently, Charron unsuccessfully litigated a claim alleging that he was entitled to receive good time credit on his sentences under section 558.041. This court affirmed the denial of relief in Charron, 285 S.W.3d 362.

The subject of this appeal concerns another petition for declaratory judgment in which Charron claims to seek a determination of the constitutionality of section 558.041. Inmates David Bullock and Charles Rentschler filed motions to intervene in the case. The trial court denied both motions to intervene. The State filed a motion for summary judgment in which it argued that Charron was essentially claiming that he is entitled to receive good time credit under section 558.041 and that his claim failed as a matter of law. The trial court granted the motion, finding that Charron had no entitlement to be considered for good time credit. The court further found that there is no liberty interest in receiving consideration for good time credit, that section 558.041 is not a contract or agreement between the Department of Corrections and inmates entitling them to good time credit, that the statute is not unconstitutionally vague, and that inmates with life sentences may properly be excluded from consideration for good time credit. This appeal by Charron followed.

## Standard of Review

An appellate court's review of an appeal from summary judgment "is essentially de novo." ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993). Whether or not summary judgment should be granted is an issue of law, and "an appellate court need not defer to the trial court's order granting summary judgment." Id. We review the record in the light most favorable to the party against whom summary judgment was entered. Id. "Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. We accord the non-movant the benefit of all reasonable inferences from the record." Id. (citations omitted). "Summary judgment is appropriate where the moving party establishes a right to judgment as a matter of law and that no genuine issue of material fact exists." United Mo. Bank, N.A. v. City of Grandview, 105 S.W.3d 890, 895 (Mo.App. W.D.2003).

## Application of Section 558.041

Charron characterizes four of his points on appeal as challenges to the constitutionality of section 558.041. While he alleges that the trial court erred in finding that section 558.041 is not vague and ambiguous, the substance of his arguments focuses on the trial court's purported misappli-

cation or misunderstanding of section 558.041, rather than the constitutionality of the statute.

Section 558.041 provides in pertinent part:

3. The director of the department of corrections shall issue a policy for awarding credit. The policy may reward an inmate who has served his sentence in an orderly and peaceable manner and has taken advantage of the rehabilitation programs available to him. Any violation of institutional rules or the laws of this state may result in the loss of all or a portion of any credit earned by the inmate pursuant to this section.

4. The department shall cause the policy to be published in the code of state regulations.

Section 558.041.3 gives the director of the Department the ability to create and implement a policy for awarding good time credit. The Department exercised this authority though 14 CSR 10–5.010, which provides in pertinent part that inmates serving life sentences are not eligible for time credit. 14 CSR 10–5.010(2)(B)(3).

■ In his first point on appeal, Charron contends that section 558.041 and 14 CSR 10–5.010 violate Missouri's prohibition on retrospective laws. This court addressed a similar issue when an inmate argued that an amendment to the conditional release statute was improperly applied retroactively to his case. *See Cooper v. Holden,* 189 S.W.3d 614, 619 (Mo.App. W.D.2006). This court held that, where the inmate did not have an established conditional release date when the amendment took effect, the procedural change in the statute did not affect a substantive right of the inmate and could be applied to him. Further, this court noted that good time credit applies only as to a conditional release date and that 14 CSR 10–5.010 states that an inmate serving a life sentence is not eligible for good time credit. *Id.* Because the inmate in *Cooper* was serving a life sentence and did not have a conditional release date, he could not be awarded good time credit. *Id.*

■ Similarly, Charron is serving a life sentence and had no specific conditional release date or entitlement to good time credit when 14 CSR 10–5.010 was promulgated. An amended law may be applied retroactively if the change is procedural in nature and does not affect a substantive right of the party. *Id.* Where Charron did not previously have a conditional release date or an entitlement to good time credit, the policy enunciated in 14 CSR 10–5.010 did not affect a substantive right of Charron. Additionally, this court has noted that the application of good time credit is procedural. *Cooper,* 189 S.W.3d at 619 n. 5. Therefore, section 558.041 and the policy in 14 CSR 10–5.010 may properly be applied to Charron without violating Missouri's ban on retrospective laws. Charron's first point is denied.

■ In his second point, Charron claims that the policy in 14 CSR 10–5.010 was not properly promulgated. This court previously addressed the same issue in *Cooper. See* 189 S.W.3d at 619. This court noted that the regulation was promulgated under the authority of section 558.041, which "provides freedom for the Department of Corrections to create and implement a 'good time' credit policy it deems appropriate." *Cooper,* 189 S.W.3d at 619. The court found that the policy set forth in the regulation fell "squarely within the discretion given to the Department by the General Assembly in section 558.041" and was, therefore, valid under the authority granted by the General Assembly. *Id.* Because the policy in 14 CSR 10–5.010 was properly promulgated by means of the authority

granted by the General Assembly, Charron's second point is denied.

■ Next, Charron claims that the language in section 558.041 creates a contract or agreement by which inmates have an entitlement to good time credit. Charron cites the language of section 558.041.3, claiming that it states that an inmate will receive time credit if he meets certain requirements. This court has previously interpreted the language of section 558.041.3 and found that the language vests the Department with discretionary authority. *See Badgley v. Mo. Dep't of Corr.*, 977 S.W.2d 272, 276 (Mo.App. W.D. 1998). While section 558.041.3 requires the Department to issue a policy for awarding credit, the language of the statute does not indicate that the policy *must* award inmates with time credit; rather, it states that the policy *may* reward an inmate with time credit. *See Badgley*, 977 S.W.2d at 276. Charron further claims that, based on the language of section 558.041.1, inmates have the right to expect time credit. This subsection provides that inmates *may* receive additional credit when they meet the requirements for such credit as provided in subsections 3 and 4 of the statute. As noted in *Badgley*, this language is discretionary and nothing in section 558.041 creates an entitlement to time credit. Charron's point is denied.

Charron next appears to contend that the trial court improperly declared that the Missouri Supreme Court is bound by the decision of a lower appellate court, *i.e.*, this court's decisions in *Cooper* and *Badgley*.[1] The trial court did not make such a declaration but, rather, properly applied binding precedent from this court in its

decision. Charron's point is without merit and is therefore denied.

## Trial Court's Adoption of the State's Proposed Judgment

■ In his next point, Charron argues that the trial court illegally delegated its judicial function by adopting a proposed judgment drafted by counsel for the State. However, adopting a proposed judgment submitted by a party "has become a common practice in Missouri courtrooms and raises no constitutional problems so long as the court, after independent reflection, concurs with the contents of the proposed findings and conclusions." *Skillicorn v. State*, 22 S.W.3d 678, 690 (Mo. banc 2000). Although drafted by counsel for the State, there is no evidence that the judgment is not the result of independent reflection by the trial court. The trial court did not err in adopting the State's proposed judgment. Charron's point is denied.

## Motions to Intervene

■ In his final point, Charron contends that the trial court erred in denying David Bullock and Charles Rentschler's motions to intervene as of right pursuant to Rule 52.12(a). The denial of a motion to intervene as of right is appealable. *State ex rel. Webster Cnty. v. Hutcherson*, 199 S.W.3d 866, 872 (Mo.App. S.D.2006). However, we must address whether Charron has standing to appeal the trial court's denial of Bullock and Rentschler's motions.

The Southern District addressed similar circumstances in a recent case. *See In re P.G.M.*, 149 S.W.3d 507 (Mo.App. S.D. 2004). In that case, the prospective adoptive parents filed a petition to adopt P.G.M. and terminate the parental rights

---

1. Charron's claim is likely based on his assertion that his points on appeal concern the constitutionality of section 558.041. However, while Charron characterizes his claims as constitutional challenges, Charron is in fact merely claiming that the trial court misinterpreted or misapplied the statute.

of the natural parents. *Id.* at 509–10. On appeal from the judgment terminating his parental rights, the natural father argued that the trial court had erred in denying his sister's motion to intervene in the adoption petition. *Id.* at 516. The court noted that the father's sister was not a party to the appeal and that she was the party who would be aggrieved by the trial court's ruling. *Id.* Because only the party aggrieved by an action of the trial court may appeal and raise a claim of error, the court found that the natural father lacked standing to appeal the denial of his sister's motion to intervene. *Id.* (citing § 512.020, RSMo 2000).

Neither Bullock nor Rentschler filed a notice of appeal or a brief in the present case. As was the case in *P.G.M.*, Bullock and Rentschler, rather than Charron, were the parties aggrieved by the trial court's denial of their motions to intervene. Therefore, Charron does not have standing to appeal the trial court's denial of Bullock and Rentschler's motions to intervene and his point is denied.

The judgment of the trial court is affirmed.

All concur.